## S. D. WARREN COMPANY

### *vs.*

## MAINE CENTRAL RAILROAD COMPANY.

## Cumberland.     Opinion December 30, 1926.

*A complaint against proposed changes in freight rates filed under sec. 2 of chap. 44 P. L., 1917 is seasonably filed if a hearing thereon can be fixed after reasonable notice to all parties within thirty days after such proposed changes become effective.*

*While the Public Utilities Commission possesses only statutory powers, if it has jurisdiction over the subject matter, and keeps within the bounds marked out by the statutes, its orders and decrees unreversed or unmodified in the manner provided by the statutes have the effect of judgments, and can not be attacked in another proceeding*

The form of the order of the Public Utilities Commission involved in this case is sufficient. The provision in chapter 55, sec. 47, R. S. as to fixing a time for an order to become effective is permissive and not mandatory. Without a definite time being fixed, an order becomes effective upon its service upon the utility. The order to refund in the case at bar must be construed to apply only to sums collected prior to the date of the order. As to all sums unlawfully collected after the date of the order, the plaintiff has a remedy at common law.

It is not essential in case of a Public Utility where an individual is obliged to pay to obtain the service that it be paid under protest; or a demand be made before action is brought.

On report. An action to recover the difference between freight rates paid on shipments of pulp wood by plaintiff and those ordered by the Public Utilities Commission. The case was reported to the Law Court on an agreed statement of facts.

Judgment for the plaintiff.

The case is fully stated in the opinion.

*Johnson, Clapp, Ives & Knight and Drummond & Drummond,* for plaintiff.

*Charles H. Blatchford,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DEASY, STURGIS, BASSETT, JJ., MORRILL, A.R.J.

WILSON, C. J.   An action to recover moneys collected of the plaintiff by the defendant, a common carrier, for the transportation of pulpwood, which the plaintiff contends were in part ordered refunded by the Public Utilities Commission under section 2 of chapter 44, P. L. 1917, and in part were unlawfully collected, being in excess of the maximum rates established by the commission as reasonable for such service.

On January 4, 1924, the defendant company under section 28, chapter 55, R. S., as amended (P. L. 1917 c. 135), filed with the Public Utilities Commission a schedule of proposed changes in its freight rates, including those for the transportation of pulpwood, to become effective February 5, 1924.   On February 15th, following, the plaintiff filed a complaint with the commission, alleging that the proposed rates were unreasonable, and on the same day the commission issued its order for a public hearing on the plaintiff's complaint on the 28th day of February, of which hearing due notice was given to all parties interested.

At the hearing on February 28, the defendant, by a motion to dismiss, raised the question of the jurisdiction or authority of the commission to act on the complaint, upon the ground that the complaint was not filed in accordance with chapter 44, P. L. 1917, nor signed by ten persons as required by section 43, c. 55, R. S.   The commission overruled the motion and held that the complaint was seasonably filed under section 2 of chapter 44, P. L. 1917, and the hearing was continued until May 6, 1924, when the defendant again renewed its motion to dismiss for lack of jurisdiction, which the commission overruled, and proceeded to hear the parties, and on August 4, 1924, filed its findings:   That the proposed rates were unreasonable, in that they were excessive, and fixing a maximum rate that might thereafter be lawfully charged for the transportation of pulpwood within the state, and also ordering the defendant company to refund within six months all sums collected by it of the plaintiff for such service in excess of the maximum rates established by the commission.

In September, 1924, on a petition of the defendant for a rehearing, a hearing was ordered, and the petition dismissed, and the defendant was ordered to file a new schedule of rates to conform to the order of the commission issued on August 4, 1924.   Exceptions were taken to the rulings of the commission, but were not presented within the time prescribed by its rule, and were never perfected.

The plaintiff now contends that the order of August 4th is final and binding on the parties, and cannot be attacked collaterally in this action, while the defendant contends that the commission had no jurisdiction over the complaint; that, in ordering a hearing thereon, it acted without authority, and its final order was therefore a nullity; and, further, that the order as issued was not in the form required by the statute, and was of no effect, and the sums collected by it on the shipments in question were the sums legally established by its schedule filed on January 4, 1924.

The case is reported to this court on an agreed statement and the pleadings, which include a count for moneys had and received.

It is true that the Public Utilities Commission possesses only statutory powers. If it exceeds those powers, or, though it has jurisdiction over the subject-matter, proceeds in a manner unauthorized by the statute, or otherwise exceeds its authority, its decrees are of no validity, *Spofford* v. *B. & B. Railroad*, 66 Me. 26, and may be attacked collaterally. If, however, it keeps within the bounds marked out by the Legislature, its orders, unreversed or unmodified in the manner provided by the statutes, have the effect of judgments, and cannot be attacked in another proceeding, because of some alleged error of law, which might have been corrected on proper application to the court of last resort under the statute. *Hamilton* v. *Water Co.*, 121 Me. 422, 117 A. 582; *Public Serv. Com.* v. *Indianapolis*, 193 Ind. 37, 137 N. E. 705; *Ala. Water Co.*, v. *Attalla*, 211 Ala. 301, 100 So. 490.

It is urged by the counsel for the defendant that to authorize the commission to proceed under section 2 of chapter 44, P. L. 1917, a complaint must be filed before the rates have become effective, otherwise the investigation would be, not of proposed rates, but of effective rates, which can only be done under sections 43–50 of·chapter 55, R. S.; and he bases his contention on the ground that the title of the act contained in chapter 44, P. L. 1917, indicates that it relates only to "proposed rates," and that the hearing authorized under section 2 is for the purpose of investigating the propriety of "proposed change or changes."

But the terms of the act clearly indicate, we think, that with respect to complaints against changes in rates for all other public service, except for the transportation of freight, and changes in freight rates, the Legislature established two entirely distinct methods of procedure:

"Under section 1, "whenever the Public Utilities Commission receives notice of any change or changes proposed to be made in any schedule of rates filed with said commission * * * it shall have power at any time before the effective date of such change or changes, either upon complaint or upon its own motion," etc. (changes affecting the transportation of freight being expressly excepted); while section 2 provides that, "whenever the Public Utilities Commission receives notice of any change or changes proposed to be made in any schedule * * * affecting the transportation of freight, * * * said commission shall have power at any time within thirty days after the effective date of such change or changes, either upon complaint or upon its own motion, * * * to * * * make investigation * * * of such proposed change or changes."

The legislative reason for distinguishing between freight rates and other public service rates is immaterial; but, if for any reason it is deemed advisable that proposed changes in certain utility rates, if complained against, should not be collected until they have been determined to be reasonable by the Utilities Commission, than a complaint must be filed and a hearing and investigation had, before they become effective, which may involve the power of suspension pending investigation. On the other hand, if for any reason it is deemed proper that proposed changes in certain rates would not be suspended upon complaint, but should become effective and be collected pending investigation as to their reasonableness, a provision for refunding any excess collected over what the Utilities Commission may determine to be the maximum reasonable rate for such service seems both logical and appropriate; but there can be no occasion, and no sufficient reason has been suggested, for the complaint being filed in such cases before the rates become effective, if it is filed and a hearing held within a reasonable time following, which the Legilature has fixed in this instance as 30 days. It is also strongly indicative of the legislative intent that it provided in express terms for the filing of a complaint before the changes become effective under section 1, when suspension is authorized, and omitted such a provision and left it to implication, if required, in section 2, where the proceedings are based

on the assumption that the rates may become effective before the hearing and investigation.

That chapter 44 by its title relates to "proposed" changes is of no weight against the express provisions of the act itself. The investigation also by the terms of section 2 relates to the "proposed" change or changes, the implication, therefore, might be said to be just as strong that the hearing and investigation must be prior to the "effective date" as that the complaint must be filed before the  roposed change became effective; yet no one would urge construing the language of section 2 to require the hearing and investigation to precede the effective date of the proposed changes. To require the complaint and notice of hearing under section 2 to precede the "effective datc" would be reading into the statute something that is neither expressed or implied.

As to the form of the order issued by the commission after the hearing and investigation, we think it was sufficient under the statute. In some instances, conditions might warrant the fixing of a future date on which an order establishing the maximum rates that might be charged by a utility should become effective. We construe the provision in section 47, c. 55, R. S., for the fixing of a date on which its orders shall become effective as permissive, and not mandatory. No limit is fixed. It is left to the discretion of the commission. Without a definite date being fixed, it becomes effective upon the signing of such order and its service on the utility. In this case, the defendant was permitted to file a new schedule complying with the order of the commission, to become effective in 3 days, instead of the 30 provided in section 28, c. 55, R. S., as amended, if the defendant desired to increase its rates from those obtaining on January 4, 1924, to the maximum permitted by the commission. In such a case the commission may have deemed it unnecessary to postpone the date on which its order should become effective. A "proper" order under the statute is not an order in any prescribed form, but one appropriate to the situation and to carry out the findings of the commission.

The order to refund, however, must be construed as applying only to sums collected under its schedules in effect prior to August 4, 1924, the date of the order. It is to persons from whom sums "have been collected" that the statute applies, and to whom by the order of the commission the refund is to be made. The commission will not assume that a utility will not comply with its order, if, indeed, it can

under the statute order refunded money that may be collected in the future in excess of such maximum rates as it may establish. *Baer Bros. v. Denver & R. G. R. R.*, 233 U. S. 479, 485, 34 S. Ct. 641, 58 L. Ed. 1055. As to all sums unlawfully collected after August 4th, the plaintiff has its remedy at common law.

As to the sums collected prior to August 4, 1924, in excess of the maximum rate established by the commission, therefore, the plaintiff is entitled to recover in this action by virtue of the order to refund under section 2 of chapter 44, P. L. 1917; as to the sums collected after August 4th, in excess of the lawful rates for such service, or, as claimed in the writ, in excess of the maximum rates established, the defendant is liable as for money had and received. *Mitchell Coal Co. v. Penn. R. R. Co.*, 230 U. S. 247, 257, 33 S. Ct. 916, 57 L. Ed. 1472; *Southern Pac. Co. v. Darnell-Taenzer Co.*, 245 U. S. 531, 38 S. Ct. 186, 62 L. Ed. 451.

It is not essential, in case of money collected by a public utility, where the individual is obliged to pay to obtain the service, that it be paid under protest or a demand be made before suit. *Boston v. Edison Co.*, 242 *Mass.* 305, 310, 136 N. E. 113; *Clough v. B. & M. R. R.*, 77 N. H. 222, 254, 90 A. 863; *Carew v. Rutherford*, 106 Mass. 12, 8 Am. Rep. 287.

The plaintiff is also entitled to receive interest on the sums recovered. *Hall v. Huckins*, 41 Me. 574, 580; *Lynch v. De Viar*, 3 Johns. Cas. (N. Y.) 310; *Fletcher v. Belfast*, 77 Me. 334, 337. On the sums collected prior to August 4, 1924, the commission ordered them refunded within six months. Interest on such sums will therefore run from February 5, 1925. On the sums collected after August 4, 1924, in excess of the maximum rates fixed by the commission, interest will run from the date of collection. *Fletcher v. Belfast*, supra. The plaintiff is therefore entitled, according to the claim in its writ, except for slight error in computation, to a judgment for $551.78, with interest on $250.82 from February 5, 1925, to date of judgment, and on the several sums that make up the balance from the date of payment to date of judgment, interest to be computed by the clerk.

So ordered.