INHABITANTS OF HOLDEN *vs.* INHABITANTS OF VEAZIE.

Penobscot. Opinion April 11, 1882.

*Private laws, 1853, c. 134.    Pauper settlement.    Incorporation of a new town.*
The imposition of a liability for the support of a single specific class of paupers upon the new town in an act dividing an existing municipality, does

not necessarily impose upon the remaining portion, the burden of supporting all other paupers not included in such class.

Unless it is apparent that the legislature intended to prescribe a rule for all pauper cases liable to arise between the two sections, and to supersede the general law by the specific provision, cases which do not fall within the specific provision will be governed by the general law.

ON REPORT.

Assumpsit for pauper supplies furnished Charles H. Mann and wife.

Charles H. Mann had never gained a settlement for himself, but had the derivative settlement of his father, Perry Mann.

The opinion states the material facts.

*Wilson and Woodard*, for the plaintiffs, cited : *Eddington* v. *Brewer*, 41 Maine, 462 ; *Frankfort* v. *Winterport*, 51 Maine, 445 ; Private Laws, 1853, c. 134 ; and 1860, c. 422.

*John Varney*, for the defendants.

The act of incorporation of Veazie, contained provisions at variance with the general law and the latter must yield. *Lewiston* v. *Auburn*, 32 Maine, 492.

In *Monroe* v. *Frankfort*, 54 Maine, 253, after reciting the act setting off a portion of Frankfort to Monroe, which provided that certain paupers then and thereafter chargeable, were assigned to Monroe, APPLETON, C. J., in the opinion of the court, says : "All other paupers, it would seem to follow, are to be supported by Frankfort."

The courts of this State and Massachusetts, have recognized that upon a division of a town, the act of separation may assign the pauper settlements, irrespective of residence at the time. *Bloomfield* v. *Skowhegan*, 16 Maine, 59 ; *Lewiston* v. *Auburn*, 32 Maine, 492 ; *Yarmouth* v. *No. Yarmouth*, 44 Maine, 352 ; *Southbridge* v. *Charleston*, 15 Mass. 248 ; *Bridgewater* v. *W. Bridgewater*, 9 Pick. 55 ; *New Braintree* v. *Boylston*, 24 Pick. 164.

Those who had acquired settlements in Bangor at the time of the separation, may be divided into three classes :

1. Those whose five years' residence had been wholly on what remained Bangor.

2. Those whose five years' residence had been wholly on what was made Veazie.

3. Those whose residence had been partly in one section and partly in the other.

The settlement of all three classes were then at Bangor. And the act of separation provided that the new town of Veazie should take the second class, as I have classified them above.   That left the settlements of the first and third classes still in Bangor, and Perry Mann belonged to the third class.   Residence at the time of the separation, did not control, it required five years' continuous residence to fix the settlement in the new town.

BARROWS, J.   The ingenious and carefully constructed argument of the defendants' counsel, will be found when analyzed to bring us, if it is accepted as sound, to the following results : whenever in an act dividing a town, any affirmative provision is made that a certain class of paupers shall be supported by one of the towns, such provision *ipso facto*, imposes the support of all others on the other town ; the making of any special provision respecting support of paupers in the act incorporating the new town, supersedes and annuls the operation of the general law, even in cases which are not included in the special provision.

Hence he claims that inasmuch as the act dividing Bangor, and incorporating the new town of Veazie (c. 134, Private Laws of 1853), provides that "all paupers now supported by the city of Bangor, or which may hereafter become chargeable to said city by reason of settlement gained in the territory included in the town of Veazie, shall be hereafter supported by and chargeable to said town of Veazie," it follows that all paupers whose five years' continuous residence giving them a settlement was, though partly, not wholly upon "the territory included in the town of Veazie," are to be supported by Bangor, and that the descendants of Perry Mann who was residing in Veazie at the date of its incorporation, and had then gained a settlement by five years' residence there and in other parts of Bangor, are chargeable not to Veazie, but to Bangor by virtue of this provision.   We do not think such a construction ought to prevail.   It is carrying the doctrine of *expressio unius exclusio alterius*, too far.

That maxim, while it is capable of wide and useful practical application, is of such a character that "great caution is requisite in dealing with it." Broom's Legal Maxims, 627. This observation is fortified by the remarks of the court, in *Saunders* v. *Evans*, 8 H. L. Cas. 729; *Eastern Arch. Co.* v. *The Queen*, 2 El. & Bl. 906, 907, and *Bostock* v. *N. Staffordshire Railway*, 4 El. & Bl. 832, where Lord CAMPBELL says in so many words, "in construing instruments so loosely drawn as these local acts, we can hardly apply such maxims as that 'the expression of one thing is the exclusion of another' or that 'the exception proves the rule.'" It is the intention of the legislature, which we are to discover from the language used. If they had intended by declaring Veazie liable for the support of a particular class of paupers to exonerate it from the support of others who would belong to it under the general law, it is more natural to suppose that they would have added to the provision above quoted from the act, the four words which would have made that intention clear, "all others to Bangor."

It is by no means apparent from the making of this single imperfect provision, that the legislature intended to interfere with the general law applicable in such case as this, or that they designed to establish rules which should govern in all cases that were liable to arise between Bangor and Veazie.

The provision itself is not inconsistent with the general law as applied to a case like Perry Mann's. It may have been inserted *ex abundanti cautela.* It may be the not uncommon case where a feeble and ill-sustained effort at clearness and precision results under the manipulations of ingenious counsel, in the obscurity which it was designed to avoid. · .

Though there might be a necessary implication that Bangor should provide for those who had acquired a settlement by a five years' residence wholly in what remained Bangor after the division, still the case of Perry Mann whose settlement had been gained by a residence partly on one section and partly on the other, would be a *casus omissus*, to be governed by the general law. There is no provision in the special act at variance with the general law, so far as such a case as his is concerned.

The case differs in its essential facts from that presented in *Lewiston* v. *Auburn*, where the pauper had gained his settlement by a five years' residence wholly on that part of Minot which was not incorporated into Auburn.

We think that the settlement of the paupers here in controversy must depend upon the general law as in *Eddington* v. *Brewer*, 41 Maine, 462 ; and *Frankfort* v. *Winterport*, 51 Maine, 445.

*Defendants defaulted.*

APPLETON, C. J., VIRGIN, PETERS, LIBBEY and SYMONDS, JJ., concurred.