**William R. MAINES, et al.**

v.

**SECRETARY OF STATE.**

Supreme Judicial Court of Maine.

Argued June 7, 1984.

Decided May 17, 1985.

As Modified June 7, 1985.

Greenberg & Greenberg, Stanley Greenberg (orally), Rita M. Farry (orally), Portland, for plaintiff.

Susan P. Herman, Asst. Atty. Gen. (orally), Rufus E. Brown, Deputy Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

ROBERTS, Justice.

William Maines and Peter Guthrie appeal from the Superior Court's denial of their motion for class certification and entry of summary judgment on the ground of res judicata in favor of the defendant Secretary of State ("the State"). The plaintiffs' drivers' licenses were suspended by the State as of August 12 and August 30, 1983, respectively, for violation of 29 M.R.S.A. § 2241–G(2)(B) (Supp.1984), promulgated as part of an act to deter teenage drinking and driving. Neither Guthrie nor Maines requested a post-suspension administrative hearing nor sought direct review in Superior Court pursuant to 29 M.R.S.A. § 2242 (Supp.1984). Instead, on October 6, 1983,

they filed this class action in Superior Court asserting the facial unconstitutionality of the act and seeking declaratory and injunctive relief. Because we agree that this action is barred by applicable principles of res judicata, we affirm the summary judgment.

Section 2241–G sanctions operation of a motor vehicle by a person less than 20 years old with .02% or more by weight of alcohol in his blood and provides for suspension of that person's license upon receipt of a law enforcement officer's report of a violation. The statute also provides for a post-suspension hearing if requested in writing within 10 days of receipt of the suspension notification. After such a hearing, a party may appeal to the Superior Court within 30 days pursuant to 29 M.R.S.A. § 2242 (Supp.1984) for review of the administrative decision.

On July 30, 1983, Guthrie was notified by the State that his license would be suspended as of August 12 based on a report that he had operated a motor vehicle on July 19, 1983, with .02% by weight of alcohol in his blood. On August 17, Maines was notified that his license would be suspended as of August 30 for a similar violation allegedly committed on July 29, 1983. Both suspensions were for one year. Both notices informed the recipients of their right to an administrative hearing and of the 10 day deadline for requesting the hearing.

On October 6, 1983, Maines and Guthrie filed this class action complaint, asserting, *inter alia,* the facial unconstitutionality of the statute. They alleged that the act denied them due process and equal protection of the law and constituted a bill of attainder under the federal and Maine constitutions. In response to the State's motion to dismiss, the Superior Court found the constitutional claim barred by the doctrine of res judicata. The court entered summary judgment for the State. The court also denied the plaintiffs' motion for class certification.

I.

The case at bar involves no factual dispute. The only issue presented is a facial challenge to the constitutionality of the statute. There was no determination, nor could there have been any determination, of a factual issue by the agency that would affect the issue raised in this action. Where the facial constitutionality of the statute underlying the agency action is in issue, there is no need for agency fact finding. *Town of Windham v. LaPointe,* 308 A.2d 286 (Me.1973). The plaintiffs, relying on *Fisher v. Dame,* 433 A.2d 366 (Me.1981), argue that their departure from the route of direct judicial review is justified

> where claim is made that the ordinance under which the administrative agency purported to act was unconstitutional on its face, a contention which, if established, would render the administrative action beyond lawful authority....

433 A.2d at 374.

The State contends that the instant case is controlled by *Small v. Gartley,* 363 A.2d 724 (Me.1976), and *Piacitelli v. Quinn,* 449 A.2d 1126 (Me.1982). In both cases, as in the instant case, administrative adjudication had been commenced against the plaintiffs, and in both of those cases we held that the plaintiffs could not ignore the statutorily imposed appeal procedures *even though* their collateral challenges raised the constitutionality of the operative statute. In *Small* the plaintiff's driver's license was suspended as the result of three OUI convictions. He brought an action challenging the constitutionality of the statute authorizing suspension long after the time limitation for direct administrative and judicial review of the suspension had run. We said:

> [I]f a public agency exceeds its statutory powers or, even in matters over which it has jurisdiction, proceeds in a manner unauthorized by law, its orders, decrees and judgments may be attacked collaterally as null and void, but, if within the periphery delimited by the legislative

power grant, such orders, decrees and judgments, when unreversed or unmodified *in the manner provided by the pertinent legislation,* have the effect of final judgments, and they cannot be attacked before a judicial forum other than that expressly set up by the Legislature, for some alleged error of law, even of constitutional dimension, which might have been corrected on proper application *to the court of last resort* provided under the statute.

*Small,* 363 A.2d at 729 (emphasis in original).

In *Piacitelli* we followed our decision in *Small.* In *Piacitelli* we held that the plaintiff, who had not pursued his statutorily provided right to direct review, could not collaterally attack the constitutionality of the suspension of his driver's license. *Piacitelli,* however, was based in part on our earlier holding in *State v. Higgins,* 338 A.2d 159, 161 (Me.1975), in which we held that a person whose license had been suspended could not challenge that suspension through the self-help measure of driving while under suspension. *Piacitelli* involved a criminal action brought by the State against Piacitelli and also a civil action brought by Piacitelli attacking the validity of the suspension of his license. We rejected Piacitelli's constitutional claim in the criminal case on the *Higgins* rationale. However, our affirmance of the dismissal of Piacitelli's civil action was based on *Small,* 449 A.2d at 1128.

We now recognize that much of the language in our opinions concerning these issues is based on the historical underpinnings of equitable relief. The merger of law and equity, coupled with improved administrative procedures and our modern civil rules, now allows us to analyze this case under conventional res judicata concepts.

The concept allowing collateral attack of void decisions, *see Small,* 363 A.2d 724, developed when administrative determinations were not judicially reviewable by "appeal." Judicial review was facilitated by using extraordinary writs such as prohibition, mandamus, certiorari, and injunction. These writs were held not to reach "mere error," but only instances of administrative action "in excess of jurisdiction," thereby implying that the agency action was null and void. Today, "mere error" justifies timely review, and perhaps reversal, but in the absence of such review, the administrative determination is not subject to subsequent attack.

■ The processes used in our administrative agencies are now substantially similar to those employed by courts, and their decisions may be accorded the finality that attaches to judicial judgments. The rules of res judicata thus may be applied to agencies with respect to their own adjudications.

Furthermore, the distinction between "direct" and "collateral" attack has been blurred over the years. Distinctions between direct and collateral attack differ depending upon the context in which they are presented and thereby result in needless confusion of the basic issue whether relief from a judgment is appropriate. The merger of law and equity, coupled with the availability of M.R.Civ.P. 60(b), removes any need to resort to the obfuscatory distinction between direct and collateral attack. Except in certain situations in which the time limits in rule 60(b) preclude relief under its provisions, the rule affords a party to a judgment the full range of relief that might be obtained through an independent action.

II.

We conclude that many of the concepts carried over from the complexities of archaic procedures do not serve our present needs. We no longer find it helpful to analyze the availability of equitable relief from this type of final agency action in terms of the adequacy of legal remedies. We find no significant assistance in resort to the dichotomy of direct versus collateral attack or to the distinction between void

and voidable decisions. The time has come for us to analyze the rights of the parties in terms of res judicata principles.

Section 83 of the *Restatement (Second) of Judgments* (1982) declares that under appropriate conditions the res judicata principles developed in judicial proceedings are applied to adjudicative determinations by administrative tribunals. Application of the defense of res judicata is subject to the same exceptions and qualifications as in court judgments. When dealing with agency decisions governed by the procedural protections of the Maine Administrative Procedure Act (M.A.P.A.), 5 M.R.S.A. §§ 8001–11008 (1979 and Supp.1984), the legitimate public interest in finality outweighs any concern for "correctness" in the process. The only exceptions are those applicable to judgments generally. In this case the plaintiffs permitted the administrative agency's adjudication of the State's right to suspend their license to become final with the resulting res judicata consequences.

The plaintiffs seek to avoid the defense of res judicata on the ground that the Secretary of State did not act in the context of an adjudicatory proceeding. Instead, they claim that the agency's action was "routine and ministerial." Their argument overlooks express provisions of the M.A.P.A. which, along with 29 M.R.S.A. § 2241–G(2)(B) (Supp.1984), permits the agency to "place on any party the responsibility of requesting a hearing." 5 M.R.S.A. § 9053 (1979). Moreover, section 9053 permits the agency to make informal disposition (without hearing) of any adjudicatory proceeding by default.[1]

 The affidavits of the plaintiffs establish quite clearly that they deliberately suffered the suspensions to become final pursuant to section 2241–G(2)(D) as a result of their failure to request a hearing.

The plaintiffs argue that because the Secretary of State is not required to provide an adjudicatory hearing absent a request, the proceeding herein was not adjudicatory in nature. We reject any notion that the plaintiffs could prevent entry of a final agency adjudication by their own default. Similarly, we reject the plaintiffs' claim that there were no default judgments entered because there is absent "a rule of finality." We determine that section 2241–G(2)(D) now makes explicit what was implicit in the original version of section 2241–G(2)—that the suspension becomes final in the absence of a request for hearing. Moreover, we find no defect in the notices mailed to the plaintiffs.

Plaintiffs argue somewhat circuitously that (1) the statutory limitation imposed upon the scope of the administrative hearing denies due process and (2) that the nature of their facial attack upon the constitutionality of the statute excuses their failure to exhaust administrative remedies. Even on appeal the plaintiffs have not suggested any prejudice resulting to them from perceived limitations upon a hearing they did not request. Contrariwise, they assert with some vigor that an administrative determination of the facts would have no impact upon the gravamen of their complaint.[2]

We distinguish the application of res judicata in this case from the doctrine of exhaustion of administrative remedies. The plaintiffs' argument that the Superior Court could declare void or enjoin enforcement of a statute facially unconstitutional without the necessity of a prior administrative proceeding misses the point. We need not and we do not decide whether the plaintiffs could have raised their constitutional claim upon a complaint filed prior to the administrative decision becoming final and

---

1. A default may be set aside by the agency for good cause shown. 5 M.R.S.A. § 9053(3).

2. In *Boston Milk Producers, Inc. v. Halperin*, 446 A.2d 33, 36 (Me.1982), we intimated that constitutional issues may be decided in an action for declaratory judgment if there is no necessity for a determination of facts by an administrative agency. We sidestepped, however, any review of procedures that could be called adjudicatory thus avoiding any res judicata problem.

without any administrative hearing. We simply decide that they cannot permit the administrative action to become final and then seek judicial relief in the absence of factors justifying post-judgment relief.

We reject the plaintiffs' assertion that the facial unconstitutionality of the statute effectively excused their failure to follow usual procedures. Relying upon the above-quoted dictum in *Fisher v. Dame,* 433 A.2d at 372 (Me.1981), the plaintiffs suggest that the unconstitutionality of the statute renders the administrative action beyond lawful authority. That argument must depend for its validity upon the notion, formerly accepted, that "a judicial determination of unconstitutionality nullifies the legal force of the statute from its inception." That principle has been previously rejected by this Court in *State v. Higgins,* 338 A.2d 159, 161–162 (Me.1975).

In *Higgins,* 338 A.2d at 162, we quoted as a distillation of the modern view the suggestion from *Lemon v. Kurtzman* (II), 411 U.S. 192, 201, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973), that courts will "eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests, notwithstanding that those interests have constitutional roots." We determine that the methodology of the Restatement offers the best means of reconciling the tension between finality of administrative action and validity of result. The plaintiffs herein have presented no basis for relief from a final judgment. They are bound by their own deliberate choice to permit the decision of the Secretary of State to become final.

In view of our disposition on the merits of the plaintiffs' complaint, we need not discuss the claim of error in denying class certification.

The entry is:

Judgment affirmed.

All concurring.